UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOYCE HAYES, Personal Representative
for the Estate of MICHAEL NORMAN, Deceased,

       Plaintiff,

v.                                                          Hon. Victoria A. Roberts
                                                          Case No. 04-71826

CITY OF DEARBORN, OFFICER CHRISTOPHER
DAVID TRUELL, and OFFICER JAMES FORD

       Defendants.
_____

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON §1983 CLAIM AND DISMISSING THE ACTION

**I.    INTRODUCTION**

      This matter is before the Court on Defendants' Motion for Summary Judgment. For the following reasons, the Court **GRANTS** Defendants' Motion on its §1983 claims and **DISMISSES** Plaintiff's state law claims. The parties stipulate that the City of Dearborn should be dismissed.

**II.    BACKGROUND**

      This action arises from Defendants' use of deadly force during an armed robbery and ensuing police chase on August 12, 2003. The decedent, Michael Norman ("Norman"), entered a 7-11 convenience store on 2600 N. Telegraph Road in the City of

Dearborn at approximately 5:00am.  He went behind the counter and loaded cigarettes into a garbage bag.  The clerk activated the silent alarm notifying police.  The clerk states that when he told Norman he cannot be behind the counter Norman replied, "If I pull it out, you're dead" - indicating he had a weapon.  [Defendant's Brief, Exhibit A]. The clerk responded by raising his hands; he did not actually see a weapon.

Norman left the store as Officer Michael McNamara ("McNamara") arrived. McNamara followed Norman's truck and attempted to pull it over.  Norman kept going and a three mile pursuit ensued.  Defendant Officer James Ford ("Ford") joined in the chase.  The chase temporarily ended when Norman struck a fence at the end of a dead end street near Summer-Stevens Park.

After striking the fence, Norman remained inside his truck.  McNamara and Ford exited their cars to apprehend Norman.  Around that time, Officer Edward Doulette ("Doulette") and Defendant Officer David Truell ("Truell") arrived on the scene.  They were partners and shared a car.  Fearing Norman may attempt to flee again, Defendants state that Doulette intentionally collided with Norman's truck.

Despite the collision, Norman remained in his truck and began to drive away. The Defendants claim Norman accelerated toward McNamara, who was on foot, and nearly hit him.  Ford claims he fired his weapon in defense of McNamara.  According to the Defendants, Norman then turned the truck toward Ford and accelerated.  Truell, seeing this, also began firing at Norman.  McNamara did not fire.  At least seventeen shots were fired during this incident, which lasted approximately 15 seconds after Norman's truck was struck by Doulette.  Neither party addresses whether Norman was hit by bullets during this incident.

Norman sped away and another three mile chase began. It ended when Doulette's car collided with Norman's truck on a residential street in the City of Dearborn Heights. The police car came to rest on the lawn of a home, directly behind Norman's truck. Doulette was trapped inside the police car. Truell exited the police car and approached Norman's truck. Truell claims he heard the truck engine accelerate and saw the truck backing toward him and the car with Doulette trapped inside. Truell fired four shots at the truck, he claims in self-defense. However, the Plaintiff contends that forensic evidence leads to the conclusion that Truell fired from the driver's side, indicating Truell was not behind the truck and in fear of his safety when he fired shots. For this, Plaintiff relies on a report furnished by a forensic expert. Defendants do not disagree; testimony indicates Truell began firing while behind the truck, but moved towards the driver's side and continued firing as the truck continued to back up.

Ultimately, Plaintiff claims Norman was shot for not following police orders, not because he was any threat to the safety of officers. Norman was pronounced dead at the scene.

An autopsy revealed four bullet wounds. One shot entered the left side of his face, adjacent to the bridge of his nose. Another shot entered the back of the head, three inches below the top of the head. Two other shots entered the left chest, near and below the armpit.

The Plaintiff, Joyce Hayes, personal representative of the Estate of Michael Norman, filed suit on May 13, 2004. She named Truell and Ford, the only officers who fired weapons, as Defendants, as well as the City of Dearborn. She alleged excessive force pursuant to 42 USC §1983. She also alleged state law claims of gross

negligence, willful and wanton misconduct, assault and battery, and intentional infliction of emotional distress.

On May 26, 2005, Defendants filed a motion for summary judgment on all counts as to all Defendants. Ford and Truell, sued in their individual capacities, assert qualified immunity. The Plaintiff agreed to dismiss the City of Dearborn as a Defendant. **III.**

### STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing

out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

## IV. APPLICABLE LAW AND ANALYSIS

### A. Excessive Force Claim

The Plaintiff claims Ford and Truell violated Norman's Fourth Amendment rights by unreasonably using deadly force.

The test for reasonableness in the use of force "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Scott v. Clay County*, 205 F.3d 867, 876 (6th Cir. 2000). The determination of what is reasonable is not capable of precise definition. Instead, it requires a case-by-case analysis of the facts and

5

consideration of the circumstances, including: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The reasonableness of the use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments about the amount of force that is necessary, in circumstances that are tense, uncertain, and rapidly evolving.  *Scott,* 205 F.3d at 877.

On the other hand, the use of deadly force against a fleeing felon, without an indication that he is a threat, is unreasonable.  *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).  "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."  *Id.*

If the use of force was reasonable, the officer is entitled to qualified immunity. Qualified immunity is immunity from suit rather than a mere defense to liability.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  "Police officers are afforded qualified immunity for their discretionary functions, provided their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998)(citation omitted). Qualified immunity is designed to reduce the social costs of litigation by dismissing insubstantial lawsuits without trial.  *Id.* (citation omitted).  When the legal question of qualified immunity turns upon which view of the facts concerning the reasonableness of

the use of force the jury believes, summary judgment is not appropriate. *Sova*, 142 F.3d at 903.

Summary judgment is appropriate here on Plaintiff's excessive force claim. There is no genuine issue of material fact on any of the three factors listed in *Graham*, *supra*. First, Norman committed a serious crime. Second, Truell and Ford testified Norman posed an immediate threat to their safety; he attempted to injure them with his truck on more than one occasion. Third, Norman actively attempted to evade arrest by flight by driving away from officers at high speeds and disobeying orders to stop.

The Plaintiff's allegation that Norman did not threaten officers is simply not supported by any evidence. Truell and Ford both testify that Norman attempted to run them and McNamara over with his truck on two separate occasions. [Defendants' Motion, Exhibits H and I].

> A. **[In reference to the shooting at the first scene]**
> I observed the suspect's vehicle beginning to lunge forward and drive directly at Officer McNamara.
>
> Q. And you fired some shots at it?
>
> A. At the time I felt Officer McNamara's life was in imminent danger, yes, I did.

[Deposition of James Ford, p. 7].

> A. **[In reference to the shooting at the first scene]**
> I stand there with my weapon continued being drawn at the truck in response to his threat to Officer McNamara.
>
> Q. I understand. Tell me what happens.
>
> A. Well, at that point the vehicle took a sharp turn, as I began hearing gun shots, and then began driving directly towards Officer Ford continuing to accelerate.

Q. Do you fire your weapon?

A. At that point, yes.

[Deposition of Christopher Truell, p.40].

Q. **[In reference to the shooting at the second scene]** And did you fire all of the shots at the truck while behind the truck?

A. No.

Q. Okay...Can you tell me how many shots fired from your weapon came from behind the truck?

A. I'm estimating, guessing two to three.

Q. And after you fired two to three from directly behind the truck, what did you do?

A. I had to jump out of the way of the truck to prevent it from striking me.

...

Q. Which way do you jump, do you jump to the right?

A. I jump towards the driver's side of the car - I'm sorry, the pickup truck, to avoid it from hitting me.

[Deposition of Christopher Truell, p.71-72].

The two tapes submitted from Ford and Doulette's cars, recorded during both incidents, do not favor either side because the pertinent moments were out of view of the camera. [Plaintiff's Response, Exhibits C and D].

Importantly, the above outlined testimony is substantial evidence on two of the *Graham* factors - threat to the safety of the officers and Norman's efforts to continue to evade arrest.  While Plaintiff relies on a forensic report that the fatal shots fired at Norman came from the driver's side of Norman's truck - Plaintiff says this belies the

Defendant's claim that Truell was behind the truck and acting in self defense - the testimony of the officers supports the Plaintiff's own expert.  The uncontradicted evidence is that to save his own life and because the truck kept moving, Truell moved from behind it, towards the driver's side, and continued to shoot at Norman.  "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."  *Garner*, 471 U.S. at 11.

Viewing this evidence in the light most favorable to the Plaintiff, and drawing all reasonable inferences in the Plaintiff's favor, there is no question of fact here that Defendants' use of deadly force was reasonable.  *See Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992).  Truell and Ford are entitled to qualified immunity.  Summary judgment is **GRANTED** them on Plaintiff's excessive force claim.

### B.   State Law Claims

Because the Court grants summary judgment on Plaintiff's excessive force claim, the only remaining claims are based on Michigan law.  The Court declines to exercise supplemental jurisdiction over the state law claims, pursuant to 28 USC §1367(c)(3).  Therefore, the balance of the action is **DISMISSED**.

### V.   CONCLUSION

For the foregoing reasons, Defendants' Motion for summary judgement is **GRANTED** on the federal claim only and the state law claims are **DISMISSED**.

**IT IS SO ORDERED.**

s/Victoria A. Roberts

**Victoria A. Roberts**
**United States District Judge**

**Dated: December 21, 2005**

> **The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on December 21, 2005.**
>
> **s/Linda Vertriest**
> **Deputy Clerk**